IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ABIGAIL GARVER,
Plaintiff,

v.  Civil No. 3:21cv235 (DJN)

RICHARD HOLBROOK, *et al.*,
Defendants.

## MEMORANDUM OPINION

Plaintiff Abigail Garver ("Plaintiff") originally brought this action in the Circuit Court for the City of Richmond against Defendants Richard Bryan Holbrook ("Holbrook") and O'Hagan Meyer PLLC ("O'Hagan Meyer") (collectively, "Defendants"), seeking damages for personal injuries sustained when Holbrook's vehicle allegedly struck Plaintiff as she rode a motorized skateboard. On April 7, 2021, Holbrook, with the consent of O'Hagan Meyer, removed Plaintiff's claims to this Court based on diversity jurisdiction. (Notice of Removal ("NOR") (ECF No. 1-1).)

This matter now comes before the Court on Plaintiff's Motion to Remand (ECF No. 3), which moves to remand this case back to the Circuit Court for lack of subject matter jurisdiction, and Defendants' Motion to Dismiss (ECF No. 5), which moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims for failure to state a claim. For the reasons set forth below, the Court hereby DENIES Plaintiff's Motion to Remand (ECF No. 3) and DISMISSES O'Hagan Meyer from this action. Accordingly, the Court DENIES AS MOOT Defendants' Motion to Dismiss (ECF No. 5) to the extent that it seeks the dismissal of O'Hagan Meyer. Additionally, the Court DENIES Defendants' Motion to Dismiss (ECF No. 5) to the

extent that it seeks the dismissal of Holbrook. In short, this case will remain in federal court against Holbrook only.

## I. BACKGROUND

In resolving Plaintiff's Motion to Remand, the burden falls on Holbrook, as the removing party, to establish federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). To determine whether Holbrook has met this burden, the Court will strictly construe the allegations in Holbrook's Notice of Removal (ECF No. 1-1) and resolve all inferences in favor of remand. *Id.* With these principles in mind, the Court recites the following facts from Plaintiff's Complaint.

### A. Plaintiff's Allegations

On April 17, 2019, Plaintiff operated a motorized skateboard as she traveled westbound in a multi-use bike lane in the City of Richmond. (Compl. (ECF No. 1-3) ¶¶ 1-2.) At that same time, Holbrook operated a Mazda vehicle as he traveled eastbound on East Franklin Street near its intersection with North 2nd Street. (Compl. ¶ 4.) As Holbrook turned left into the entrance of a parking garage, his vehicle struck Plaintiff. (Compl. ¶ 7.) According to Plaintiff, the collision resulted from Defendant's failure to yield the right of way as Plaintiff passed the parking garage. (Compl. ¶¶ 6-7.) As a result of the collision, Plaintiff suffered serious personal injuries. (Compl. ¶ 14.) Plaintiff asserts that O'Hagan Meyer, a law firm and Holbrook's employer, "is vicariously liable for the negligence of" Holbrook, because Holbrook "acted within the course and scope of his agency and/or employment with" O'Hagan Meyer. (Compl. ¶¶ 11-12.)

From these allegations, Plaintiff seeks, among other things, five million dollars ($5,000,000) in damages. (Compl. at 3.)

2

### B. Holbrook's Notice of Removal[1]

On April 7, 2021, Holbrook removed Plaintiff's claims to this Court with the consent of O'Hagan Meyer. (NOR ¶ 19.) In support of removal, Holbrook claims that the Court may exercise diversity jurisdiction over Plaintiff's claims. (NOR at 1, ¶¶ 3-14.) Specifically, Holbrook contends that the parties share complete diversity and that the amount in controversy exceeds $75,000.00. (NOR ¶¶ 5-14.) Indeed, Holbrook points out that Plaintiff's Complaint seeks damages of $5,000,000. (NOR ¶ 5.) Moreover, Holbrook states that at all relevant times, he resided in North Carolina and Plaintiff resided in Virginia. (NOR ¶¶ 6-7.) And, although O'Hagan Meyer qualifies as a citizen of Virginia, Holbrook contends that the Court may ignore its citizenship under the nominal defendant and/or fraudulent joinder doctrine. (NOR ¶¶ 8-14.)

### C. Plaintiff's Motion to Remand

Following Holbrook's removal, on April 22, 2021, Plaintiff moved to remand her claims back to state court for lack of subject matter jurisdiction. (ECF No. 3.) In support of her Motion, Plaintiff maintains that the Court cannot exercise diversity jurisdiction over her claims, because she and O'Hagan Meyer share Virginia citizenship and O'Hagan Meyer does not constitute a fraudulently joined party. (Pl.'s Mem. in Supp. of Mot. to Remand to State Court

---

[1] On May 6, 2021, Defendants filed a Motion to Dismiss Pursuant to Rule 12(b)(6) (the "Rule 12(b)(6) Motion") (ECF No. 5), moving the Court to dismiss Plaintiff's Complaint for failure to state a claim. Curiously, Defendants style their Rule 12(b)(6) Motion as asking for the dismissal of both Holbrook and O'Hagan Meyer. However, Defendants argue for dismissal solely on the ground that Plaintiff has failed to adequately plead a theory of vicarious liability against O'Hagan Meyer. (Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss) ("Defs.' Rule 12(b)(6) Mem.") (ECF No. 6) at 4-6.) For the reasons explained below, the Court will dismiss O'Hagan Meyer through operation of the fraudulent joinder doctrine. However, the Court DENIES Defendant's Rule 12(b)(6) Motion to the extent that it seeks dismissal of Holbrook, for two reasons: (1) Defendants have not advanced any argument showing that Holbrook should be dismissed; and, (2) the Complaint plausibly alleges a negligence claim against Holbrook. (Compl. ¶¶ 1-14 (alleging facts showing duty, breach, causation and damages).)

("Pl.'s Mem.") (ECF No. 4) at 1, 5-9.) According to Plaintiff, she has a possibility of establishing a claim against O'Hagan Meyer, given her belief that Holbrook "was using his cellphone for work purposes at the time of the collision." (Pl.'s Mem. at 6.) Additionally, although her Complaint does not contain a factual allegation to that effect, Plaintiff submits that her generic averments of respondeat superior liability would suffice under Virginia's notice pleading standards. (Pl.'s Mem. at 6.)

In response, Defendants argue that O'Hagan Meyer proves a fraudulently joined party, because the Court cannot consider the post-removal allegations set forth in Plaintiff's Motion to Remand.[2] (Defs.' Mem. in Opp'n to Pl.'s Mot. to Remand ("Defs.' Resp.") (ECF No. 7) at 1.) In essence, Defendants urge the Court to examine Plaintiff's state-court Complaint, apply the *Twombly/Iqbal* plausibility standard and conclude that the absence of factual allegations against O'Hagan Meyer militates that Plaintiff fraudulently joined the law firm. (Defs.' Resp. at 5-6.)

Plaintiff filed her Reply Brief in Support of Motion to Remand to State Court on May 11, 2021, (Pl.'s Reply Br. in Supp. of Mot. to Remand to State Court) ("Pl.'s Reply") (ECF No. 8), rendering the matter now ripe for review.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action to a federal district court when the plaintiff could have originally brought the action in federal court. A motion challenging the removal of an action may be premised on either a lack of subject matter jurisdiction or a procedural defect apart from jurisdiction. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). Motions to remand premised on a district court's lack of

---

[2] In their Opposition, Defendants do not advance the argument that O'Hagan Meyer constituted a nominal defendant.

subject matter jurisdiction may be filed at any time, and the burden to establish federal jurisdiction falls on the removing party, with a removing party's jurisdictional allegations strictly construed in favor of remand. *Mulcahey*, 29 F.3d at 151. Ultimately, a party seeking removal must establish that the district court can exercise original jurisdiction over the plaintiff's claims, which in most cases requires allegations supporting either federal question or diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332, respectively.[3] *Id.* (citing § 1441).

### III. ANALYSIS[4]

Because Plaintiff's jurisdictional challenges determine the Court's authority to consider the merits of Plaintiff's claims, the Court will address those challenges first. *See Docs Billing Sols., LLC v. GENETWORx LLC*, 2018 WL 4390786, at *2 (E.D. Va. Aug. 30, 2018) (noting that jurisdictional challenges — in that case, a motion to remand pursuant to a forum selection clause — should take precedence over other motions (citing *Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 680 (4th Cir. 2018)).

#### A. The Fraudulent Joinder Doctrine

A threshold dispute exists over the appropriate standard of review and the extent to which the Court may consider facts extrinsic to Plaintiff's state-court Complaint. (*Compare* Pl.'s Mem. at 6 (emphasizing that Virginia does not require a plaintiff to plead negligence with specificity and asking the Court to consider the likelihood that Holbrook used his cell phone for work-

---

[3] A federal district court has diversity jurisdiction when: (1) the amount in controversy exceeds $75,000; and, (2) "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Accordingly, if Plaintiff and O'Hagan Meyer share Virginia citizenship, and Defendants fail to prove fraudulent joinder, then the Court does not have diversity jurisdiction over this action.

[4] The materials before the Court adequately present the facts and legal contentions such that oral argument would not aid the decisional process.

5

related purposes at the time of the collision) *with* Defs.' Resp. at 5-6 (asking the Court to apply the *Twombly/Iqbal* standard and arguing that Plaintiff's Complaint fails to plausibly allege a respondeat superior theory of liability against O'Hagan Meyer).) Accordingly, the Court must first ascertain the analytical framework applicable to the fraudulent joinder doctrine.

The party seeking removal based on diversity jurisdiction must establish that all parties are completely diverse, and all allegations supporting jurisdiction will be strictly construed in favor of remand. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). That said, a defendant's right to removal should not be "easily overcome by tactical maneuvering by plaintiffs." *McKinney v. Bd. of Trs.*, 955 F.2d 924, 928 (4th Cir. 1992).

To that end, "[w]hen a plaintiff tactically names a non-diverse defendant to defeat diversity jurisdiction, the defendant may invoke the judicially created doctrine of fraudulent joinder to remove the case to federal court." *Carter v. Hitachi Koki U.S.A., Ltd.*, 445 F. Supp. 2d 597, 600 (E.D. Va. 2006) (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "This doctrine allows a district court to dismiss a non-diverse defendant and assume jurisdiction over the case." *Id.* (citations omitted). Notably, although the name suggests otherwise, the fraudulent joinder doctrine does not require a showing of actual fraud. *Id.* (citing *Mayes*, 198 F.3d at 461 n.8). Instead, the removing party must demonstrate either that: "'[1] there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [2] . . . there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Mayes*, 198 F.3d at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

Here, Defendants have not posited that "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* As such, the Court must determine whether "there is no

6

possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Id.*

The "no possibility" standard strongly favors the plaintiff seeking remand. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). Indeed, the standard does not require a showing of ultimate success on the merits, but only of a "slight possibility of a right to relief" against the nondiverse defendant. *Id.* at 426. As such, the standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Rule 12(b)(6)]." *Id.* at 424. "Once the court identifies [a] glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.* at 426. Importantly, when the Court conducts this analysis, it must resolve "all issues of law and fact in the plaintiff's favor." *Id.* at 424.

The rigor of this standard means that "fraudulent joinder is typically only found in cases of legal impossibility." *Flores v. Ethicon, Inc.*, 563 F. App'x 266, 269 (4th Cir. 2014). After all, in making the "no possibility" determination, the Court "is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *AIDS Counseling & Testing Ctrs. v. Grp. W. Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)); *but see Allard v. Laroya*, 163 F. Supp. 3d 309, 312 (E.D. Va. 2016) (concluding that the Court should only look beyond the pleadings when the plaintiff adds a nondiverse defendant *after* removal). Ultimately, however, the Court has discretion in deciding whether to examine facts extrinsic to the complaint. *Flores*, 563 F. App'x at 269.

Despite the apparent clarity of this black letter law, federal courts have consistently declined to apply the "no possibility" standard literally. *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 818 (E.D. Va. 2005) ("the 'no possibility' language cannot be taken literally; rather, what is

7

meant is that there is 'no reasonable basis' for predicting liability on the claims alleged.") (citations omitted); *see also Flores*, 563 F. App'x at 269 (declining to apply the "no possibility" standard literally "[w]here a complaint is so inadequate and the record so entirely lacking in factual support that we can only reasonably conclude that the non-diverse defendants were added to defeat jurisdiction.").

In practice, then, courts tend to engage in a watered-down summary judgment analysis wherein the court takes full view of the factual record while applying a "reasonable possibility" test. For instance, in *Beaudoin v. Sites*, the district court asked whether "there is a reasonable possibility that a state court would rule against any of" the defendants, and then proceeded to deny remand based on a factual and legal analysis of the entire record. 886 F. Supp. 1300, 1302-06 (E.D. Va. 1995). Specifically, in deciding that the plaintiff had fraudulently joined two of the defendants, the court relied on a factual determination that the "uncontested evidence" showed that neither defendant "[was] in any way connected to [the plaintiff's] accident and injury." *Id.* at 1304. As for the third defendant, the court employed a legal analysis to conclude that the Supreme Court of Virginia had foreclosed the plaintiff's first and third theories of liability, and a factual analysis to conclude that the plaintiff had failed to produce any evidence supporting the second theory.[5] *Id.* at 1304-06; *cf. Carter*, 445 F. Supp. 2d at 597 (E.D. Va. 2006) (requiring the plaintiff to show "some evidence . . . in the record to substantiate the cause of action.").

---

[5] Critically, the *Beaudoin* court allowed the parties to engage in discovery before deciding the motion to remand. *Id.* at 1302. This Court hesitates to follow that tack, given the Fourth Circuit's admonition that courts should "minimize threshold litigation over jurisdiction," because "extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules." *Hartley*, 187 F.3d at 425. In *Hartley*, the Fourth Circuit chided the district court for "delving too far into the merits in deciding a jurisdictional question." *Id.*

Notwithstanding these prevailing winds, Plaintiff urges the Court to confine its analysis to Virginia's notice pleading regime. (Pl.'s Mem. at 6 (citing Va. Sup. Ct. R. 3:18).) To that end, Plaintiff emphasizes that Virginia law does not require a plaintiff to plead the particulars of a negligence claim. Va. R. Sup. Ct. 3:18(b). Moreover, "[v]icarious liability claims benefit from a unique presumption that shifts the burden of production on the scope-of-employment issue to the defense once a complaint alleges the existence of an employment relationship at the time of the employee's tort."[6] *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 21 (Va. 2019). Indeed, the mere allegation that the defendant committed a tort in the context of an employment relationship creates a rebuttable presumption "that facts exist (though not specifically pleaded) that would satisfy the 'established test' for vicarious liability." *Parker*, 819 S.E.2d at 822-23 (reversing circuit court's order sustaining demurrer, because "factual contests" surrounding the scope of the employment relationship cannot "be addressed at the pleading stage."). In fact, this pleading standard proves so favorable to plaintiffs that a defendant can defeat the presumption only when the plaintiff "plead[s] herself out of court by affirmatively alleging facts that rebut the presumption." *Id.* Accordingly, if the Court relied exclusively on Virginia's pleading standards in evaluating the instant fraudulent joinder issue, the analysis would end here.

But, as discussed above, the federal courts have consistently rolled up their sleeves to undertake a serious analysis of whether a plaintiff's allegations generate a reasonable possibility of legal success. In fact, this Court has found only one opinion in which a court expressly

---

[6] Defendants argue that this pleading presumption only applies in sexual molestation cases. (Defs.' Resp. at 7.) However, Defendants do not cite any authority for that position, and *Our Lady of Peace* does not cabin the presumption to such cases. Moreover, the Supreme Court of Virginia has applied the presumption outside of the sexual molestation context. *Parker v. Carilion Clinic*, 819 S.E.2d 809, 822-23 (Va. 2018).

anchored its analysis to state law pleading standards.[7] *Allard*, 163 F. Supp. 3d at 312. And even there, the court looked at the factual allegations to ascertain whether they evinced a colorable legal claim under Virginia law. *Id.*

In short, a substantial body of persuasive caselaw convinces the Court that it must take a hard look at the record to determine whether Plaintiff has any reasonable possibility of establishing a claim against O'Hagan Meyer. However, because Plaintiff has not had an opportunity to conduct discovery, the Court will not demand that Plaintiff provide concrete evidence that Holbrook used his phone for work-related purposes at the time of the accident. Instead, the Court will resolve that factual issue in Plaintiff's favor[8] and then consider whether Plaintiff's claim for vicarious liability proves viable under Virginia law.

### B. Defendants Have Shown that Plaintiff Has "No Possibility" of Establishing a Claim Against O'Hagan Meyer.

In Virginia, a plaintiff must establish three elements to prevail on a negligence claim; that: (1) defendant owed plaintiff a duty; (2) defendant breached that duty; and, (3) the breach of duty proximately caused plaintiff to suffer damages. *Allard*, 163 F. Supp. 3d at 313 (citing *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003)). Additionally, "an employer is liable for the tortious acts of its employee if that employee was performing the employer's business and acting within the scope of the employment." *Newport News Indus. v.*

---

[7] Plaintiff herself has cited no examples.

[8] Unlike the plaintiff in *Carter*, Plaintiff has some possibility of proving that Holbrook used his phone for a work-related purpose. 445 F. Supp. 2d at 601 (finding fraudulent joinder when "[t]he only witness . . . who can prove plaintiff's case has testified unequivocally by affidavit that [the defendant] did not sell the allegedly defective product."). Here, although Holbrook has produced phone records apparently disproving that he made or received a call at the time of the accident, these records do not foreclose the possibility that he sent or received a text message or e-mail around that same time. (Ex. 1 to Defs.' Resp. (ECF No. 7-1) at 3.)

*Dynamic Testing*, 130 F. Supp. 2d 745, 750 (E.D. Va. 2001) (quoting *Giant of Md., Inc. v. Enger*, 515 S.E.2d 111, 112 (Va. 1999)).

In this case, a principle known as the "going and coming rule" defines the contours of the employment relationship. *Asplundh Tree Expert Co. v. Pac. Emps. Ins. Co.*, 611 S.E.2d 531, 536-37 (Va. 2005). Under that rule, "commuting or the mere act of traveling to work [is generally] not a natural incident of an employer's business." *Feldheim v. Turner*, 743 F. Supp. 2d 551, 557 (E.D. Va. 2010) (internal quotation marks and citations omitted). As such, an injury that transpires while an employee commuted to or from work does not ordinarily generate respondeat superior liability. *Id.* However, Virginia has recognized certain exceptions to this rule, to include: (1) where the employer reimbursed the employee for travel time; (2) when the employer paid for or provided the means of transportation; (3) where the ingress and egress constitutes the sole access to the employer or the employer constructed it; and, (4) when the employee is on his way to or from work and the employer has charged him with some duty or task in connection with his employment. *Id.*; *GATX Tank Erection Co. v. Gnewuch*, 272 S.E.2d 200, 203 (Va. 1980).

As mentioned, Plaintiff's theory of liability against O'Hagan Meyer hinges on the (unproven) fact that Holbrook may have used his cell phone for work-related purposes while commuting to the office. Given as much, the going and coming rule would generally foreclose O'Hagan's Meyer liability. However, Plaintiff submits that Holbrook's use of his cell phone implicates the fourth exception — i.e., that O'Hagan Meyer might have charged Holbrook with some duty or task in connection with his employment. (Pl.'s Mem. at 8-9.) Accordingly, Plaintiff relies on an exception to a no-liability rule in her effort to identify a "glimmer of hope" of prevailing against O'Hagan Meyer.

11

The Court has found no controlling precedent dictating whether the use of a cell phone to communicate with an employer while en route to work fits within the fourth exception to the going and coming rule. However, to the extent that Virginia courts have interpreted the exception, their interpretations show that it would not apply to the instant case.

For example, in *Harbin v. Jamestown Vill. Joint Venture*, the decedent worked for Jamestown Village Joint Venture (the "employer" or "company") as a renovation coordinator. 428 S.E.2d 754, 754-55 (Va. Ct. App. 1993). His job duties included completing and supervising kitchen and bathroom renovations at various apartments that his employer renovated. *Id.* at 755. Accordingly, where the decedent reported for work depended on which building his employer was then renovating. *Id.* Although the employer mostly renovated buildings throughout northern Virginia, it sought out new business opportunities in the District of Columbia. *Id.* Specifically, the employer proposed to renovate thirteen buildings in D.C., whereupon D.C. officials required the company to attend a series of public hearings before it could begin the renovations. *Id.* In response, the employer designated certain employees to attend the hearings, deeming them "special" events in which employees had to participate for purposes of securing the D.C. work. *Id.* Before traveling to the hearings, the employees would gather at a supervisor's office before taking the subway together into D.C. *Id.* On the morning that he died, the decedent had parked his vehicle several blocks away from the supervisor's office. *Id.* While walking to the office, the decedent crossed a busy street and, as he did so, was fatally struck by a motor vehicle. *Id.*

In determining whether the decedent's death arose out of his employment, the Virginia Court of Appeals concentrated its analysis on what it dubbed the "special errand" exception: "while the general rule is that risks of travel to and from work are not incidents of employment,

an exception exists for employees directed to perform a special errand or service for their employer." *Id.* at 757 (citation and internal quotation marks omitted). There, the court found that attending the hearings in D.C. did not constitute a regular part of the decedent's employment. *Id.* Indeed, "[i]n the seven years that [the decedent] worked under Kostyk's supervision, he had not been required to make appearances at any such meetings." *Id.* Accordingly, the court held that the decedent's death occurred while he acted in the scope of his employment, because the "special errand rule applies if the employee is given 'a temporary, special assignment' . . . [which] was outside the normal performance of [the employee's] duties, and it clearly represented a special benefit to the [employer]." *Id.* (citation omitted).

The court reached a different result in *Hardy v. Nardi Contracting Grp., Inc.*, 1998 WL 809539 (Va. Ct. App. Nov. 24, 1998). In that case, the employers had picked up the employee from her home to bring her to work. *Id.* at *1. During the ride to work, the employers and the employee discussed the upcoming company Christmas party and other business-related issues. *Id.* Unfortunately, their vehicle crashed with a tractor-trailer, causing the employee — who rode unrestrained in the back seat — to sustain personal injury. *Id.* In analyzing the fourth exception to the coming and going rule, the court expressly rejected the employee's claim that "she was performing a work-related task on her way to work as a result of her conversations with [the employers]." *Id.* at *2. The court summarily found that the exception did not apply, because "casual work conversation on the way to work does not constitute being specifically charged with a work-related duty or task." *Id.*

In sum, Virginia caselaw shows that the fourth exception applies when an employee undertakes travel to perform a "special assignment" or "errand" that the employee ordinarily does not otherwise perform. As such, merely communicating with an employer while

13

commuting to work — when that commute constitutes the same commute undertaken by the employee every workday — does not mean that the employer has charged the employee with some duty or task in connection with the employment. Here, the uncontested evidence shows that the incident occurred while Holbrook engaged in his everyday work commute. Accordingly, even if Holbrook used his cell phone for work-related purposes at the time of the accident, doing so would not subject O'Hagan Meyer to vicarious liability.

## IV.   CONCLUSION

For the reasons set forth above, the Court hereby DENIES Plaintiff's Motion to Remand (ECF No. 3) and DISMISSES O'Hagan Meyer from this action. Accordingly, the Court DENIES AS MOOT Defendants' Motion to Dismiss (ECF No. 5) to the extent that it seeks the dismissal of O'Hagan Meyer. Additionally, the Court DENIES Defendants' Motion to Dismiss (ECF No. 5) to the extent that it seeks the dismissal of Holbrook. In short, this case will remain in federal court against Holbrook only.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

\_\_\_\_/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: June 30, 2021